## Case No. 17,612.

### WICKHAM v. DILLON.

[2 West. Law Month. 511.]

Circuit Court, N. D. Ohio. Oct., 186u.

CONFLICT OF LAWS — TRANSFER OF CHATTELS—
VALIDITY—ASSIGNMENT FOR CREDITORS
—RELEASE CLAUSE.

1. The transfer of personal chattels is governed by the law of the owner's domicil, if the contract of transfer was made there, though the chattels may be, at the time, in another state, by the laws of which the transfer would be void.

2. The laws of Virginia sustain a voluntary assignment by an insolvent debtor of all his property to trustees for the benefit of his creditors; although certain creditors are preferred, upon condition that they shall accept a distributive share, and release the balance of their debts.

3. Such an assignment, made at his domicil, by a citizen of Virginia, is a valid assignment, in this state, of goods then within this state, belonging to the assignor; though such an assignment, made in this state, by a citizen thereof, would, by our laws, be fraudulent and void.

4. This is a general rule, founded on the comity of nations.

5. The principle of this case is, that a transfer, by the act of the owner at his domicil, by assignment or otherwise, of personal property, wherever it may be, is governed by the same rule of law as if it were then present at the owner's residence.

[This was an action by William S. Wickham and William S. Gosham against Moses Dillon to recover the value of 20 boxes of dry goods. Heard on motion for a new trial.]

D. Peck, for plaintiffs.

Stanton & McCook, for defendants.

WILLSON, District Judge. This is a motion to set aside the judgment obtained by the plaintiffs at the July term, 1855, and for a new trial. Two causes are assigned in support of it. The first is, that the cause was tried in the absence of the defendant and his counsel, and that said counsel were unavoidably absent through sickness. Second, that the verdict is against the evidence.

The court would grant this motion without hesitation on the first cause assigned. But as all the evidence in the case is in writing, we are asked by counsel on both sides, to review it, and grant or overrule the motion as the law and the testimony shall appear in the examination of the case on its merits.

The action is in trover, brought by the plaintiffs (as assignees and trustees of Marx Graff, of Va..) to recover the value of 20 boxes of dry goods. The defendant claims to hold these goods as sheriff, by virtue of a writ of foreign attachment, issued by the court of common pleas of Jefferson county, Ohio, against Marx Graff, at the suit of Martin Lewis & Co. From the evidence on file, it appears that in the summer of 1851, Marx Graff, a resident merchant of Wheeling. had become largely indebted to Eastern creditors for goods and merchandize. Of these goods, on their arrival at Wheeling (and before being unpacked), in August, 1851, he sold to Raphael Myerson 27 boxes, for $8,000, and took his note for the amount. Myerson shipped the goods from Wheeling to Steubenville, in the state of Ohio, and on the 2d of September placed them in store with Alexander Doyle, and took from him a warehouse receipt for the same. The goods remained in Doyle's warehouse until the 19th of November. at which time the plaintiff Wickham took possession of them by virtue of said warehouse receipt, and a written order of that date from Myerson to Doyle, for the delivery of the property to plaintiffs. This order and the warehouse receipt were taken by the plaintiffs, as assignees of Graff, in discharge of Myerson's note of $8,000. On the 21st of November, while the plaintiffs were in the act of transhipping these goods at Steubenville, the defendant Dillon, acting as sheriff of Jefferson county, seized and took into his own possession 20 of said boxes of goods, under and by virtue of the attachment process of Martin Lewis & Co. aforesaid. The plaintiffs claim title to the goods in question from Graff, who, on the 19th of November, 1851, executed and delivered to them at Wheeling, in the state of Virginia, a deed of trust of all his property for the benefit of his creditors, without any reservation whatever in restriction of title. The trust deed was duly acknowledged and recorded on the day of its execution and delivery, and the conveyance in all respects as to form was made in accordance with the laws of Virginia. This deed of trust provides, that the trustees shall sell the property as may seem proper in their discretion, on credit or for cash. They shall first pay the costs which accrue in the execution of the trust. "They shall disburse the residue in payment and satisfaction, pro rata, of all other just debts due or to become due from the said Marx Graff to any creditor or creditors, who shall, within six months from the date of this deed, as sent to the terms thereof by subscribing a release to be appended thereto, whereby the said creditor or creditors shall, in consideration of his or their claim or debt coming in for participation of the said balance, pro rata, discharge and forever release and acquit the said Marx Graff and his representatives from all responsibility for any portion, if any of such debt. claim or demand remains unpaid in the pro rata distribution of said balance, excepting, however, expressly from all benefit under the operation of this deed. any creditor or creditors who may within that period issue any legal process against the goods of the said Marx Graff, or against his person; and the residue of said fund, if any remain, shall be divided pro rata among those creditors who shall fail and refuse to come in and within said six months execute and deliver such release; and

the residue, if any, they shall pay over to the said Marx Graff or his assignees."

At the time of these transactions, the plaintiffs, Myerson and Graff, were all citizens and residents of Virginia, and the sales and paper transfer of title to the property named, were made in the city of Wheeling.

Upon this statement of facts, three questions of law are presented for our consideration: (1) Is the deed of trust, in construction and effect, to be governed by the laws of Virginia, where it was made and where the parties to it resided, or is it to be governed by the laws of Ohio, where the property is found? (2) If the former, is the deed then valid and effectual in Virginia for the legal transfer of the property? (3) Is there such evidence of fraud on the face of the transaction, that will make the transfer void, as to creditors?

It is a principle of international law, that courts shall take notice of, and give effect to, the title of foreign assignees of an insolvent debtor, whether the insolvent made the transfer himself, or the law of the state of his domicil made it for him; and it is for this reason, that the succession to, and distribution of, personal property, is regulated by the law of the owner's domicil, and not by the lex loci rei sitæ. This rule is founded, as well in the necessity to secure justice by avoiding conflicts of jurisdiction in matters affecting title, as to promote comity among states and nations. In the case of Philips v. Hunter, 2 H. Bl. 402, this question came before all the judges of the exchequer chamber on error from the king's bench. That high court fully sustained the principle as laid down by Lord Camden in Jollet v. Deponthieu [1 H. Bl. 132, note], decided in 1769, and adopted, as sound law in England, the decision of Lord Kenyon in Hunter v. Potts, 4 Term R. 182. This last case established the great doctrine, that the title of the foreign assignee of an insolvent debtor's estate, under the law of the bankrupt's domicil, was to be preferred to the subsequent attachment of the domestic creditor, made (in that case) in America under the law of Rhode Island. And it has been decided, over and over again, by the English courts, that a failing debtor, before the actual issuing of the commission of bankruptcy, might assign his property abroad as absolutely as if it had been in his own tangible possession; and that such assignee was entitled, by operation of law, to deal as he might have done with his property. The lex domicilii, in respect to personal property, has been adopted by the highest judicial tribunals in the United States, and in so doing our courts have broadly declared, that in the general disposition by the owner of personal property in one country, it will effect it everywhere, because in regard to the owner's control over it, personal property has no locality. The application of this principle impairs no right, but promotes general justice, and is founded on the mutual respect, comity and convenience of commercial states and communities. Bank v. Donnally, 8 Pet. [33 U. S.] 371; 4 Johns. Ch. 460; 8 Paige, 446–519.

The status or capacity of Graff, therefore, to make the deed, and the construction and effect of the deed itself, depend on the laws of Virginia. What, then, is the legal effect of this deed in Virginia? It is urged that the deed is void, because it is made to prefer creditors. By the 6th section of the ordinance of convention, the state of Virginia adopted the common law of England and the acts of parliament of a general nature in aid thereof, prior to the 4th year of the reign of James I. That ordinance, which was adopted in 1776, is still in force, except in such modifications as have been made by the legislature of the state. It is not pretended, however, that any such modification has been made, affecting the right of a failing debtor to so dispose of his property, as to make a preference in the payment of his creditors. The common law of England declares that "it is neither immoral or illegal to prefer one set of creditors to another." In Nunn v. Wilsmore, 8 Term R. 528, Lord Kenyon says: "Putting the bankrupt laws out of the case, a debtor may assign all of his effects for the benefit of particular creditors." And in the case of Small v. Oudley, 2 P. Wms. 427, where an assignment was made to a favored creditor, to secure money lent by him to a merchant only the day previous to the commission of the act of bankruptcy, the court, in deciding the case, said: "There may be just reasons for a sinking trader to give a preference to one creditor before another—to one that has been a faithful friend, and for a just debt lent him in extremity, when the rest of his debts might be due from him as a dealer in trade, wherein his creditors may have been gainers; whereas the other may be not only a just debt, but all that such creditor has in the world to subsist on; in such case the trader honestly may, nay ought, to give the preference." In language equally strong, the same principle was maintained by the court in Cock v. Goodfellow, 10 Mod. 489, and so of numerous other English cases. Under the ordinance of 1776, the highest judicial tribunal of Virginia, has adopted the decisions of the English common law courts on this question.

Mr. Justice Carr, in giving the opinion of the court of appeals in M'Cullough v. Sommerville, 8 Leigh, 427, says: "It is unquestionable that a debtor in failing circumstances, may prefer one creditor or one set of creditors to another; nor is his right to do so at all weakened or impugned by the maxim that equality is equity. This maxim is justly a favorite one in the courts of equity in cases to which it applies; but can not be permitted to interfere with the right which the debtor has to secure this or that creditor

or class of creditors in preference to others."

I know this doctrine is repugnant to the legislative policy of the state of Ohio. But it is the law of the domicil of the parties where the deed was made and the law obtains in giving effect to the deed, and transferring the legal title to the property, unless there is something else in the transaction which renders it fraudulent in contemplation of law; and this brings us to the only remaining question in the case: Is there such evidence of fraud in the transaction or on the face of the deed, that will make the transfer void, as to creditors? The original sale of the goods by Graff to Myerson, would doubtless have been declared fraudulent, had the goods, while in the hands of Myerson, been seized under legal process against Graff by his creditor. The circumstances of that sale had all the indicia of an intent to defraud creditors. The facts that the goods were purchased by Myerson without examination, and without being unpacked from the original boxes and sent hastily out of the state, would be sufficient to raise a legal presumption of fraud in a contest between Myerson and an attaching creditor of Graff. But the assignment to the plaintiffs by Graff of all his property for the benefit of his creditors on the 19th of November, and the subsequent cancelling of the $8,000 note, and the receipt of the goods therefor by the assignees, placed the whole matter upon a footing as if no sale had been made to Myerson at all. ' The goods and property being placed in the .hands of trustees to pay creditors, negatives any presumption of intent to defraud creditors. If the deed is valid and effectual for the purposes intended by it, then the title to the goods was perfected in the plaintiffs, and they were not thereafter subject to legal process against the assignor. But it is said that this deed has the evidence of fraud on the face of it, inasmuch as it demands a general release of the whole debt of each of the creditors, upon the payment of a part. If Graff gave up all his property, and in doing so, had a right to pay one in exclusion of others, with what propriety can he be charged with fraud, because he preferred those who should relinquish all claim upon his future earnings? To set aside this deed as fraudulent, because in its provisions those creditors are preferred who accept its terms, is really to deny the right to prefer at all; and this right, we have seen, is clearly established in Virginia. Where the failing debtor has assigned all of his property for the benefit of his creditors, and where there is no concealment, it is in accordance with the current authority of all the English cases, that such compositions are just and lawful. Jackson v. Lomas, 4 Term R. 166. So, in Brashear v. West. 7 Pet. [32 U. S.] 615, Chief Justice Marshall, in deciding the case, says: "Humanity and policy plead so strongly in favor of leaving the product of his future labor to the debtor who has surrendered all his property, that in every commercial country, except our own, the principle is established by law; and this furnishes a very imposing argument against its being a fraud." The authority of this last case was fully recognized by the Virginia court of appeals in Skipwith's Ex'rs v. Cunningham, 8 Leigh, 271, when the court unhesitatingly sustained a deed nearly similar in all of its provisions to the one now drawn in question before this court. There the deed was made by Richard M. Cunningham to Brodnax and Osborn, by which Cunningham, a failing debtor, conveyed all of his property (excepting notes to the amount of $300, which he retained to pay honorary debts) in trust for the benefit of his creditors. By the terms of the deed, the trustees were, in their discretion, to sell the property for cash or on credit, and out of the proceeds to pay first, the expenses of the trust, and then to pay and satisfy all the claims specifically enumerated, as debts of superior honorary obligation, and disburse the residue in the payment, pro rata. of all the just debts due from said Cunningham to any other creditor or creditors who should, within four months after the date of the deed, assent to the terms thereof. by subscribing a release to be appended thereto, whereby the said creditor or creditors should, in consideration of his or their claim or debt coming in for participation of the said balance, pro rata, discharge and forever acquit the said Cunningham, his heirs and administrators, from all responsibility for any portion (if any) of such debt or claim as might remain unpaid in the pro rata distribution of the said balance—excepting, however, expressly from all benefit under the operation of the deed, any creditor or creditors, who might, within that period, issue any writ of capias ad satisfaciendum against the body, or writ of fieri facias against the goods, or other process or execution against the lands of the said Cunningham, &c. The deed of Cunningham was sustained in every particular by the Virginia court of appeals.

It is not a little singular. but so it is, that the deed from Graff to his trustees. in purpose and terms, is almost in hæc verba with that of Cunningham to his trustees. Hence the facts in the case before us are substantially res adjudicata. We therefore hold, that the legal title of all Graff's property became vested in the plaintiffs by virtue of the deed which is in evidence, and that such title was a barrier against any process of law against the property.

The motion for a new trial is overruled.